IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **METROLINA STEEL, INC.,** | ) | Case No. 13-31771 |
| | ) | |
| Debtor. | ) | |

## DISCLOSURE STATEMENT OF METROLINA STEEL, INC. <u>RELATING TO PLAN OF REORGANIZATION</u>

Dated:  Charlotte, North Carolina
         October 15, 2013

Moon Wright & Houston, PLLC
Travis W. Moon (Bar No. 3067)
Richard S. Wright (Bar No. 24622)
Andrew T. Houston (Bar No. 36208)
227 West Trade Street, Suite 1800
Charlotte, North Carolina 28202
Telephone: (704) 944-6560
*Counsel for Debtor*

# ARTICLE I
## INTRODUCTION AND OVERVIEW

No representations concerning the Debtor, its business, or its future operations, other than those specifically set forth herein, have been authorized by the Debtor.

## A.      GENERAL

On August 14, 2013, Metrolina Steel, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court"). The Debtor continues in possession of its properties and the management of its business as a "debtor in possession" pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Honorable Laura T. Beyer, United States Bankruptcy Judge, has presided over this chapter 11 case (the "Chapter 11 Case") since its inception.

Contemporaneously herewith, the Debtor has filed its "Plan of Reorganization of Metrolina Steel, Inc." (the "Plan"). The Plan sets forth the proposed reorganization of the Debtor's chapter 11 estate (the "Estate") and the distribution of recoveries to creditors (collectively, the "Creditors") of the Estate. A copy of the Plan is attached as Exhibit A to this Disclosure Statement (the "Disclosure Statement").

Pursuant to § 1126 of the Bankruptcy Code, the Debtor is soliciting acceptances of the Plan from the classes of Claims entitled to vote on the Plan. This Disclosure Statement is submitted pursuant to § 1125 of the Bankruptcy Code in order to provide information of the kind necessary to enable a hypothetical reasonable investor to make an informed judgment in the exercise of his/her/its right to vote on the Plan.

## B.      PURPOSE OF DISCLOSURE STATEMENT

The Debtor provides this Disclosure Statement in order to permit eligible parties to make an informed decision in voting to accept or reject the Plan. The Disclosure Statement is presented to all Creditors in order to satisfy the requirements of § 1125 of the Bankruptcy Code. Section 1125 requires a disclosure statement to provide information sufficient to enable a hypothetical and reasonable investor, typical of the Creditors, to make an informed judgment whether to accept or reject the Plan. This Disclosure Statement may not be relied upon for any purpose other than that described above. This disclosure statement and the plan are an integral package, and they must be considered together for the reader to be adequately informed.

No representations concerning the Debtor or its property are authorized by the Debtor other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance of the Plan other than as contained in this Disclosure Statement should not be relied upon by you in arriving at your decision, and such additional representations and inducements should be reported to counsel for the Debtor, who shall in turn deliver such information to the Bankruptcy Court for such action as may be appropriate.

The information contained in this Disclosure Statement, including the information contained in any exhibits attached hereto, has not been subject to an audit or independent review. Accordingly, the Debtor is unable to warrant or represent that the information concerning the Debtor or its financial condition is accurate or complete. Any projected information contained in this Disclosure Statement has been presented for illustrative purposes only. Because of the uncertainty and risk factors involved, the Debtor's actual results may not be as projected.

Although an effort has been made to be as accurate as possible under the circumstances, the Debtor does not warrant or represent that the information contained in this Disclosure Statement is correct. The Disclosure Statement contains only a summary of the Plan. Each creditor who is entitled to vote on the Plan is urged to review the Plan prior to casting its vote.

The statements contained in this Disclosure Statement are made as of the date of the Disclosure Statement unless another time is specified. The delivery of this Disclosure Statement shall not under any circumstances create an implication that there has not been any change in the facts set forth since the date of the Disclosure Statement. Schedules of the assets and liabilities of the Debtor as of the Petition Date (collectively, as may be amended from time to time, the "Schedules") are on file with the Clerk of the Bankruptcy Court and may be inspected by interested parties during regular business hours.

This Disclosure Statement has been prepared in accordance with § 1125 of the Bankruptcy Code and not in accordance with federal or state securities law or other applicable nonbankruptcy law. Entities holding or trading in or otherwise purchasing, selling, or transferring claims against, interests in, or securities of the Debtor should evaluate this Disclosure Statement only in light of the purpose for which it was prepared. This Disclosure Statement has not been approved or disapproved by the Securities and Exchange Commission nor has the commission passed upon the accuracy or adequacy of the statements contained herein.

The Honorable Laura T. Beyer will hold a hearing on confirmation of the Plan (the "Confirmation Hearing") at the United States Bankruptcy Court, Charles Jonas Federal Building, 401 West Trade Street, Charlotte, North Carolina 28202, on _____, 2013 at _____ a.m. At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of Creditors, and will review the ballot reports concerning votes cast for acceptance and rejection of the Plan.

## C.    OVERVIEW OF THE DEBTOR AND THE PLAN

### 1.    Description of the Debtor

Formed in 1977, the Debtor is a closely held corporation that operates a steel fabrication business. The Debtor operates from a leased manufacturing plant and warehouse location in Charlotte, North Carolina.

### 2.    Reasons for the Chapter 11 Filing

The Debtor has suffered diminished revenues in recent years due to the general downturn in the American economy and the resulting drop-off in demand for its services. Copies of internal balance sheets for the years 2011, 2012 and 2013 showing the Debtor's declining financial situation are attached hereto as Exhibit B. Due to decreased cash flow and the loss of a key customer, the Debtor determined in the summer of 2013 that it could not meet its secured debt service and lease payment requirements. The Debtor filed its Chapter 11 Case to prevent foreclosures of its holdings by secured creditors, to restructure its debt obligations or liquidate its assets, and to streamline the settlement of claims against the Estate.

### 3.    The Debtor's Proposed Reorganization Pursuant to the Plan

BB&T asserts a secured claim against the Debtor of approximately $513,510.90 (including estimated fees and interest), collateralized by a first priority blanket lien on all of its assets. Additionally, Summit asserts a secured claim of approximately $872,000.00. Summit contends that it holds a first lien in pre-petition accounts receivable and inventory and a junior lien on all other assets of the Debtor

pursuant to a subordination agreement with BB&T.  The Debtor owes secured *ad valorem* taxes to Mecklenburg County, North Carolina of approximately $43,841.00.  Other priority claims (consisting primarily of additional tax liabilities) total some $20,382.65, and administrative expenses of the estate (such as counsel fees, certain third-party claims, and quarterly fees due to the Bankruptcy Court) are expected to be $46,825.00.  Finally, the Debtor anticipates that Allowed General Unsecured Claims against the Estate will total $2,026,000.00.

The Debtor has collected approximately $300,000.00 in pre-petition accounts receivable.  The Debtor also holds considerable steel inventory with a fair market value of approximately $500,000.00.  These assets, together with the Debtor's equipment, are all encumbered by the foregoing liens in favor of BB&T and Summit.  The Debtor proposes to liquidate its fabrication equipment in early December 2013 upon approval of the APA by the Bankruptcy Court, thereby generating approximately $540,000.00 after payment of sale expenses.  The company has also continued to operate during its Chapter 11 Case, and anticipates that it will have $170,000.00 in unencumbered funds on hand by the Effective Date of the Plan.  Additionally, John Hurt, an officer and 25% shareholder of the Debtor, will contribute new equity of $20,000.00 to the Reorganized Debtor upon confirmation of the Plan.

The Reorganized Debtor will pay BB&T's Allowed Secured Claim in full from the Net Sale Proceeds following the sale of its equipment collateral.  Additionally, to the extent necessary and available, the proceeds of the Debtor's pre-petition accounts receivable following satisfaction of Summit's Allowed Secured Claim shall also be disbursed and applied to the Allowed Secured Claim(s) of BB&T.  Any Allowed Unsecured Deficiency Claim of BB&T following exhaustion of the foregoing funds will be paid by Hurbel Leasing Limited Partnership, a separate entity which has common ownership with the Debtor and which previously guaranteed and cross-collateralized the Debtor's obligations to BB&T.

The Reorganized Debtor will satisfy the Allowed Secured Claim of Summit by surrendering its encumbered steel inventory, and by paying the creditor that amount of its pre-petition accounts receivable and the Net Sale Proceeds (after satisfaction of BB&T's Allowed Secured Claim) as are necessary to satisfy the Claim.  In satisfaction of any remaining Allowed Unsecured Deficiency Claim it may hold, Summit will receive 5% of the remaining funds held by the Reorganized Debtor after satisfaction of all Allowed Priority Claims, Allowed Administrative Claims, and Allowed Claims in Classes 1-4.

Holders of Allowed General Unsecured Claims may elect one of two distribution options, and the Ballots provided to Creditors will contain provisions for their selection.  The treatment afforded to the holders of such Claims will be determined according to the option chosen by a majority in number of those unsecured creditors returning ballots voting to accept the Plan.  In the event of a tie, the vote cast by the holder of the largest General Unsecured Claim shall be counted twice (but only with respect to the distribution option selected by such claimant).

Pursuant to Option A, holders of Allowed General Unsecured Claims will receive distributions equal to their Pro Rata Share of the Net Estate Cash within 30 days after the Effective Date.  The Net Estate Cash, after payment of all prior Claims, is expected to total an estimated $75,000.00.

Pursuant to Option B, the Net Estate Cash shall be delivered to the Chief Liquidation Officer, who shall utilize such funds to pay his fees, costs, and expenses associated with the investigation and pursuit of the Estate Liquidation Claims as set forth in § 7.2 of the Plan.  Once all Estate Litigation Claims are resolved by Final Order or settlement, holders of Allowed General Unsecured Claims will receive distributions equal to their Pro Rata Share of the Net Litigation Proceeds (as well as any unused portion of the Net Estate Cash) from the Chief Liquidation Officer.  The Chief Liquidation Officer shall have all authority, standing, and rights to investigate and pursue any Estate Litigation Claims, provided

that settlement of Estate Litigation Claims will be subject to approval of the Bankruptcy Court. The Debtor projects that the net recovery on all Estate Liquidation Claims will be approximately $126,000.00.

The Existing Equity Interests in the Debtor will be cancelled upon the Effective Date of the Plan. In return for a new equity contribution of $20,000.00, John Hurt will own 100% of the Equity Interests in the Reorganized Debtor and will continue to serve as an officer of the company. Mr. Hurt will not be compensated for his service as an officer, although he may receive lawful distributions as a shareholder if the Reorganized Debtor reinstitutes its business operations in the future.

A more detailed summary of the Plan's provisions is set forth in Article III, below. For additional discussion of the Estate Litigation Claims, please refer to Article IV.C. The Debtor reserves the right to resort to the "cram down" provisions of Section 1129 of Title 11, and to provide the opportunity to new and existing equity holders to contribute sufficient equity to insure the success of the Reorganized Debtor.

## D.    DISTRIBUTIONS UNDER THE PLAN

Summaries of the classification and treatment of Claims under the Plan, and the distributions that holders of Claims may expect to receive under the Plan, are set forth in Article III of this Disclosure Statement below. The amounts listed are merely the Debtor's estimates based on information available as of the filing of this Disclosure Statement. The actual amounts could be substantially different, causing the ultimate distributions to creditors to be significantly higher or lower than estimated.

Creditors and other parties in interest are urged to review the contents of the Plan itself, which is attached as Exhibit A to this Disclosure Statement, in its entirety. To the extent that any provisions of this Disclosure Statement are inconsistent with the provisions of the Plan, the terms of the Plan shall control; provided, however, that the Confirmation Order shall control to the extent there is any inconsistency between the Plan and the Confirmation Order.

For a more detailed description, other significant terms, and provisions of the Plan, please refer to Article III below and the Plan itself.

## E.    CREDITORS ENTITLED TO VOTE ON THE PLAN

Holders of Claim or Interests in Classes 1-7 are impaired by the Plan and, as such, the Debtor is soliciting votes from holders of Allowed Claim in these classes as set forth in Article 3 of the Plan. The Plan will be confirmed if it is accepted by the requisite majorities of each Class of Claims entitled to vote on the Plan and all other conditions to confirmation are met by the Debtor. However, the Debtor may seek to "cram down" the Plan pursuant to § 1129(b) of the Bankruptcy Code on any Class of claimants that vote to reject the Plan. (For more information on "cram down," please refer to Article V, Section C below). The requisite majority for confirmation of the Plan by a particular Class without "cram down" is acceptance by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number based on Allowed Claims that are actually voted.

## F.    INSTRUCTIONS REGARDING VOTING, CONFIRMATION,
##        AND OBJECTIONS TO CONFIRMATION

### *1.    Voting Instructions*

Before voting, you should read this Disclosure Statement and its exhibits, including the Plan and its exhibits, in their entirety. Ballots must be received by the respective parties no later than _____, 2013. You may vote on the Plan by completing and mailing the enclosed Ballots to:

Moon Wright & Houston, PLLC
Attention: Richard S. Wright
227 West Trade Street, Suite 1800
Charlotte, North Carolina 28202

You should use the ballots sent to you with this Disclosure Statement to cast your votes for or against the Plan. You may NOT cast ballots or votes orally. In order for your ballot to be considered by the Bankruptcy Court, it must be received at the above address no later than the time designated in the notice accompanying this Disclosure Statement.

If you are a holder of a Claim entitled to vote on the Plan and did not receive a ballot with this Disclosure Statement, you may obtain a ballot by contacting Moon Wright & Houston, PLLC at the address shown above.

Only holders of Allowed Claims in impaired Classes are entitled to vote on the Plan. In addition, the record date of all Claims against the Debtor for voting purposes shall be October __, 2013. Persons holding Claims transferred after such date will not be permitted to vote on the Plan. An impaired Class of Claims accepts the Plan if at least two-thirds (2/3) in amount, and more than one-half (1/2) in number, of the Allowed Claims in the Class that are actually voted are cast in favor of the Plan. Subject to the terms of the Plan, Claimants who do not vote are counted as having voted for the Plan. Pursuant to the provisions of Section 1126 of the Bankruptcy Code, the Bankruptcy Court may disallow any vote accepting or rejecting the Plan if such vote is not cast in good faith. A Creditor's failure to vote on the Plan will not affect such Creditor's right to a Distribution under the Plan.

If the voting members of an impaired Class do not vote unanimously for the Plan but, nonetheless, vote for the Plan by at least the requisite two-thirds (2/3) in amount of Allowed Claims in that Class and one-half (1/2) in number of Allowed Claims actually voted in that Class, the Plan, at a minimum, must provide that each member of such Class will receive property of a value, as of the Effective Date, that is not less than the amount such Class members would receive or retain if the Estate was liquidated under chapter 7 of the Bankruptcy Code.

The Bankruptcy Court established December 17, 2013 as the deadline by which all proofs of Claim must be filed in this Chapter 11 Case. The Debtor may dispute proofs of Claim that have been filed or that the Debtor listed as disputed in its Schedules filed with the Bankruptcy Court. Persons whose Claims are disputed may vote on, or otherwise participate in, Distributions under the Plan only to the extent that the Bankruptcy Court allows their Claims. The Bankruptcy Court may temporarily allow a Claim for voting purposes only. The Schedules, which list the Claims and whether such Claims are disputed, can be inspected at the Office of the Clerk of the United States Bankruptcy Court for the Western District of North Carolina, Charles Jonas Federal Building, 401 West Trade Street, Room 111, Charlotte, North Carolina.

Whether or not a Claimant votes on the Plan, such Persons will be bound by the Plan, including the terms and treatment of Claims set forth therein, if the Plan is accepted by the requisite majorities of the Classes or is "crammed-down" and confirmed by the Bankruptcy Court. Allowance or disallowance of a Claim for voting purposes does not necessarily mean that all or a portion of that Claim will be allowed or disallowed for purposes of Distribution under the Plan.

### 2.    *Confirmation of the Plan*

Once it is determined which impaired Classes, if any, have or have not accepted the Plan, the Bankruptcy Court will determine whether the Plan may be confirmed. If all impaired Classes accept the

Plan, it will be confirmed provided that the Bankruptcy Court finds the other conditions set forth in § 1129(a) of the Bankruptcy Code satisfied.  These are complex statutory provisions, and the preceding paragraphs are not intended to be a complete summary of the law.  If you do not understand any of these provisions, please consult with an attorney.

IF ALL CLASSES DO NOT ACCEPT THE PLAN, THE DEBTOR INTENDS TO RELY UPON THE "CRAM DOWN" PROVISION OF § 1129(b) OF THE BANKRUPTCY CODE.

The Bankruptcy Court may confirm the Plan, even if all impaired Classes do not accept the Plan, if the Bankruptcy Court finds that certain additional conditions are met.  Accordingly, if the Plan is not accepted by the requisite amount of Claims in their respective impaired Classes, the Debtor will seek confirmation of the Plan as to such non-accepting Classes pursuant to § 1129(b) of the Bankruptcy Code.  Section 1129(b) of the Bankruptcy Code is generally referred to as the "cram down" provision.  The Bankruptcy Court may confirm a Plan over the objection of a non-accepting Class if the Plan satisfies one of the alternative requirements of § 1129(b)(2)(A) of the Bankruptcy Code.  The Bankruptcy Court may confirm the Plan over the objection of a non-accepting Class if the non-accepting members of the Class receive the full value of their Claims, or, if the non-accepting members of the Class stand to receive less than full value, no Classes of junior priority will receive anything on account of their respective Claims.

### 3.    *Objections to Confirmation*

Any objections to confirmation of the Plan must be filed with the Clerk of the Bankruptcy Court and served upon (a) Richard S. Wright, Moon Wright & Houston, PLLC, 227 West Trade Street, Suite 1800, Charlotte, North Carolina 28202; and (b) Linda W. Simpson, United States Bankruptcy Administrator, 402 West Trade Street, Charlotte, North Carolina 28202, in such a manner as will cause such objections to be filed with the Bankruptcy Court and received by the aforementioned parties no later than _____, 2013.

### 4.    *Confirmation Hearing*

A hearing on confirmation of the Plan is scheduled before the Honorable Laura T. Beyer, United States Bankruptcy Judge, United States Bankruptcy Court for the Western District of North Carolina, at the United States Bankruptcy Court, Charles Jonas Federal Building, 401 West Trade Street, Charlotte, North Carolina 28202, on _____, 2013 at _____ a.m.  Announcement of the adjournment or continuance of such hearing, if any, may be made in writing or in open court.  No further written notice is required to be sent to claimants, interest holders, or other parties in interest.

## ARTICLE II
## INFORMATION REGARDING THE CHAPTER 11 CASE

## A.    COMMENCEMENT OF THE CHAPTER 11 CASE

### 1.    *Filing of the Petition*

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 14, 2013.

### 2.    *Unsecured Creditors Committee Appointed*

An Official Committee of Unsecured Creditors was appointed by order entered August 29, 2013, consisting of Kloeckner Metals; Reitzel Landscape Services, LLC; and R & R Powder Coating, Inc.

### 3.      *Continuation of Business after Filing*

The Debtor has continued to manage its business and affairs as debtor in possession, subject to the oversight of the Bankruptcy Administrator and the Bankruptcy Court.  Certain actions of the Debtor during the Chapter 11 Case, including all transactions outside of the ordinary course of business, if any, were taken only after first requesting and receiving authorization from the Bankruptcy Court.  Upon the filing of the chapter 11 petition, substantially all claims against the Debtor that existed prior to the Petition Dates became subject to the automatic stay provisions under § 362 of the Bankruptcy Code while the Debtor continued operation of its business and affairs as a debtor in possession.  These pre-petition claims may arise from the determination by the Bankruptcy Court of allowed claims for contingent liabilities and other disputed amounts.

## B.      SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE

### 1.      *Filing of Schedules*

The Debtor filed its Schedules of Assets and Liabilities, and its Statement of Financial Affairs on August 28, 2013 (the "Schedules").

### 2.      *Retention of Professionals by the Debtor*

The Debtor is represented by the firm of Moon Wright & Houston, PLLC as bankruptcy counsel.

### 3.      *Bar Date for Filing of Claims*

The Bankruptcy Court established December 17, 2013 (the "Claims Bar Date") as the deadline by which all proofs of Claim must be filed in this Chapter 11 Case.  The Clerk of the Bankruptcy Court transmitted notices of the Bar Date to all known actual or potential claimants and informed them of their need to file a proof of Claim on or before the Claims Bar Date.

**ARTICLE III**
**THE DEBTOR'S PLAN OF REORGANIZATION**

The following is a summary of the provisions of the Plan and, accordingly, is not as complete as the full text of the Plan that accompanies this Disclosure Statement.  The Plan itself, attached as <u>Exhibit A</u> hereto, should be read in its entirety.

## A.      SUMMARY OF PAYMENT PROVISIONS OF THE PLAN

### 1.      *Impairment of Claims*

A class of claims or interests is deemed "impaired" under a chapter 11 plan unless, in general, the rights of the holders of the claims or interests of such class are not altered or, with respect to interests, the holders receive cash equal to the greater of (a) any liquidation preference or (b) the redemption price, if either is applicable.  Pursuant to § 1129(b) of the Bankruptcy Code, any class deemed to be impaired must accept the plan by the requisite majority before the plan can be confirmed, unless the Bankruptcy Court finds that the plan is fair and equitable and does not discriminate unfairly with respect to each class that is impaired and has not accepted the plan.

2. *Treatment of Claims*

The treatment of and consideration to be received by holders of Allowed Claims pursuant to the Plan will be in full settlement, release, and discharge of their respective Allowed Claims relating to the Debtor and other Persons, as applicable, as specified in the Plan.

**B.    CLASSIFIED CLAIMS UNDER THE PLAN**

The Plan divides the Claims against the Debtor into various Classes and designations.  Below is a description of the general Classes and designations of claims against the Debtor and the corresponding treatment thereof under the Plan.  Allowed Administrative Claims and Allowed Priority Tax Claims are not designated as classes of Claims for purposes of the Plan and pursuant to §§ 1123, 1124, 1126 and 1129 of the Bankruptcy Code.

All amounts listed for each class of claim are merely estimates, and are subject to change through the Debtor's Claims review and objection process.  All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

[Remainder of Page Intentionally Left Blank]

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| *Allowed Administrative Claims*<br><br>An Allowed Administrative Claim is any cost and expense of administration of the Chapter 11 Case entitled to priority in payment under §§ 507(a)(1) and (a)(2) of the Bankruptcy Code, or as may be allowed by Final Order of the Bankruptcy Court.<br><br>The Debtor estimates that, after completion of the claim reconciliation process, and excluding any cure amounts related to assumption of executory contracts and leases, the total amount of Allowed Administrative Claims will be (i) $6,825.00, and (ii) fees of professionals employed by the Debtor in the approximate amount of $40,000.00. | *Not Classified Under the Plan; Unimpaired*<br><br>Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as practicable after the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due. | 100% |
| *Allowed Priority Tax Claims*<br><br>An Allowed Priority Tax Claim is any Claim that is entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code.<br><br>The Debtor estimates that Allowed Priority Tax Claims total $20,382.65. | Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtor; or (c) in five (5) annual Cash payments in May of each year following the Effective Date, in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Priority Tax Claim is paid in full within five (5) years from the Petition Date. | 100% |
| | Intentionally Left Blank | |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| *Class 1: Secured Tax Claims*<br><br>Class 1 consists of Class 1 consists of all Allowed Secured Tax Claims.<br><br>The Debtor estimates that the Allowed Class 1 Claims total $43,841.30.<br><br>For purposes of voting each holder of a Secured Tax Claim shall be considered to be the sole member of a separate Class. | *Impaired Under the Plan; Entitled to Vote*<br><br>Each holder of an Allowed Secured Tax Claim shall be paid the Allowed Amount of its Allowed Secured Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Secured Claim and the Reorganized Debtor; or (c) in monthly payments commencing within thirty (30) days of the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by § 1129(a)(9)(C) or (D) of the Bankruptcy Code, such that each Allowed Secured Tax Claim will be paid in full within five (5) years of the Petition Date. Each holder of an Allowed Secured Tax Claim shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 1 Claim is satisfied as set forth herein. | 100% |
| *Class 2: Secured Claim(s) of BB&T*<br><br>Class 2 consists of the Allowed Claim(s) of BB&T, all of which are secured by a first lien on all pre-petition assets of the Debtor (subordinated to Summit with respect to pre-petition accounts receivable and inventory).<br><br>The Debtor estimates that the Allowed Class 2 Claim is $513,510.90. | *Impaired Under the Plan; Entitled to Vote*<br><br>These obligations shall be treated as a secured obligation of the Reorganized Debtor in the full amount of BB&T's Allowed Claims. Upon approval of the Sale Motion, the equipment collateral securing the Allowed Secured Claim of BB&T shall be sold free and clear of liens, claims and interests pursuant to the APA and sections 363 and 1129(b)(2)(A)(iii) of the Bankruptcy Code. On or before the Effective Date, the Net Sale Proceeds shall be disbursed and applied first to the Allowed Secured Claim(s) of BB&T. Additionally, to the extent necessary and available, the proceeds of the Debtor's pre-petition accounts receivable following satisfaction of the Allowed Class 4 Claim shall also be disbursed and applied to the Allowed Secured Claim(s) of BB&T on or before the Effective Date. BB&T shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 2 Claim is satisfied as set forth in the Plan. | 100% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| *Class 3: Unsecured Deficiency Claim of BB&T*<br><br>Class 3 consists of any Allowed Unsecured Deficiency Claim of BB&T.<br><br>The Debtor estimates that the Allowed Class 3 Claim is $0.00. | *Impaired Under the Plan; Entitled to Vote*<br><br>Any Allowed Unsecured Deficiency Claim of BB&T shall be paid in full on or before the Effective Date by Hurbel. | 100% |
| *Class 4: Secured Claim of Summit*<br><br>Class 4 consists of the Allowed Secured Claim of Summit, secured by a first lien on pre-petition A/R and inventory of the Debtor and a junior lien on all other pre-petition assets.<br><br>The Debtor estimates that the Allowed Class 4 Claim is $826,489.10. | *Impaired Under the Plan; Entitled to Vote*<br><br>This obligation shall be treated as a secured obligation of the Reorganized Debtor up to the value of the collateral securing the claim, in an amount: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code at the Confirmation Hearing or earlier upon motion of the Debtor, or (ii) as otherwise agreed upon by the Debtor and Summit.  The inventory collateral securing the Allowed Class 4 Claim shall be surrendered to Summit on the Effective Date.  To the extent necessary, the proceeds of the Debtor's pre-petition accounts receivable and any remaining Net Sale Proceeds following satisfaction of the Allowed Class 2 Claim shall be disbursed to Summit on or before the Effective Date.  Summit shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 4 Claim is satisfied as set forth in the Plan. | 100% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| *Class 5: Unsecured Deficiency Claim of Summit*<br><br>Class 5 consists of any Allowed Unsecured Deficiency Claim of Summit.<br><br>The Debtor estimates that the Allowed Class 5 Claim is $45,510.90. | *Impaired Under the Plan; Entitled to Vote*<br><br>Any Allowed Unsecured Deficiency Claim of Summit shall be treated as an unsecured obligation of the Reorganized Debtor.   The holder of the Allowed Class 5 Claim will receive a single distribution within 30 days after the Effective Date equal to 5% of the Cash held by the Estate following satisfaction of all Allowed Priority Claims, Allowed Administrative Claims, and Allowed Claims in Classes 1-4. | 100% |
| *Class 6: General Unsecured Claims*<br><br>Class 6 consists of all Allowed General Unsecured Claims.<br><br>The Debtor estimates that Allowed Class 6 Claims total $2,026,000.00. | *Impaired Under the Plan; Entitled to Vote*<br><br>Holders of Allowed General Unsecured Claims may elect one of the distribution options described below. The Ballots provided to Creditors will contain provisions for the selection of either option.   The treatment afforded to Class 6 will be determined according to the distribution option selected by a majority in number of those holders of Allowed General Unsecured Claims who return ballots voting to accept the Plan. In the event of a tie, the vote cast by the holder of the largest General Unsecured Claim shall be counted twice (but only with respect to the distribution option selected by such claimant).<br><br>Option A – Immediate Distribution:   Pursuant to Option A, holders of Allowed General Unsecured Claims will receive distributions equal to their Pro Rata Share of the Net Estate Cash within 30 days after the Effective Date.<br><br>Option B – Delayed Distribution:   Pursuant to Option B, the Net Estate Cash shall be delivered to and held in trust by the Chief Liquidation Officer, who shall utilize such funds to pay his fees, costs, and expenses associated with the pursuit of the Estate Liquidation Claims as set forth in § 7.2 of this Plan. Once all Estate Litigation Claims are resolved by Final Order or settlement, holders of Allowed General Unsecured Claims will receive distributions equal to their Pro Rata Share of the Net Litigation Proceeds (as well as any unused portion of the Net Estate Cash) from the Chief Liquidation Officer. | 4-6% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| *Class 7: Equity Interests in the Debtor*<br><br>Holder       Ownership Interest<br><br>Harry Belk      50%<br>John Hurt      25%<br>David Hurt      25% | *Impaired Under the Plan; Entitled to Vote*<br><br>In return for a new equity contribution of $20,000.00 on or before the Effective Date, John Hurt will own 100% of the Equity Interests in the Reorganized Debtor.  The existing Equity Interests in the Debtor will be cancelled on the Effective Date. | N/A |

## ARTICLE IV
## OTHER PROVISIONS OF THE PLAN

### A.   ADMINISTRATIVE BAR DATE

In accordance with § 2.2 of the Plan, and except as otherwise ordered by the Bankruptcy Court (including any order providing for an earlier date), requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals incurred before the Confirmation Date, must be filed and served on the Reorganized Debtor, and the Bankruptcy Administrator no later than thirty (30) days after the Effective Date.  Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof.  The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals incurred after the Effective Date.

### B.   EXECUTORY CONTRACTS

#### 1.   *Generally*

In accordance with § 5.1 of the Plan, as of the Effective Date, all executory contracts and unexpired leases of the Debtor that (1) have not previously been assumed or rejected by the Debtor by Order of the Bankruptcy Court, or (2) are not the subject of a motion to assume/reject pending on the Confirmation Date, shall be deemed REJECTED by the Debtor.

If not otherwise resolved by the parties, the Bankruptcy Court shall determine any dispute pertaining to the assumption and assignment of any Assumed Agreement, and any required disputed cure payment shall be paid promptly following the entry of a Final Order resolving such dispute.   In accordance with § 5.4 of the Plan and except to the extent a prior order of the Bankruptcy Court provided for an earlier date, in which case such earlier date shall control, all proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases shall be filed with the Bankruptcy Court within thirty (30) days after the earlier of (1) the date of service of notice of entry of an order of the Bankruptcy Court approving such rejection, or (2) the date of service of notice of the Confirmation Date, if such executory contract or unexpired lease has been rejected pursuant to the Plan.  Any Claims not filed within such time shall be released and discharged and forever barred from assertion against the Debtor, the Estate and the Reorganized Debtor.

   2.     *Possible Assumption of DesignLine Contract*

The Debtor's largest customer, DesignLine, filed for relief under Chapter 11 of the Bankruptcy Code on August 15, 2013. DesignLine is a manufacturer of transit buses, and it contracted prepetition with the Debtor for the fabrication of bus chassis. Additional work was yet to be performed under the terms of the parties' contract at the time of DesignLine's bankruptcy filing, which, if completed, could yield estimated profits for the Debtor of as much as $800,000.00. An auction of DesignLine's assets is currently scheduled for October 28, 2013, which sale may call for the assumption and assignment of executory contracts such as that with the Debtor. However, there is no guarantee at this time that DesignLine will assume its outstanding contract with the Debtor. To the extent that DesignLine seeks to assume and cure its executory contract with the Debtor, the Debtor and/or the Reorganized Debtor may seek to modify the Plan pursuant to § 1127 of the Bankruptcy Code if it is determined that the Debtor can perform its obligations under the contract.

## C.     AVOIDANCE ACTIONS AND OTHER CAUSES OF ACTION

The Debtor estimates that gross recoveries on Estate Litigation Claims, including, but not limited to Avoidance Actions, total $190,000.00 (before litigation expenses). Although the Debtor has not commissioned a formal solvency analysis, it appears that all transactions engaged in by the Debtor were supported by reasonably equivalent value. The majority of the Debtor's payments to creditors within the 90-day period preceding the Chapter 11 Case were COD transactions or payments in the ordinary course of business, giving rise to viable defenses to any preference claims. Nevertheless, the Debtor has identified a limited number of payments, including payments to insiders and third-party creditors, which appear to be recoverable preferences in the amount of approximately $140,000.00.

In addition, the Debtor believes that it holds a viable cause of action against insider Harry Belk for breach of fiduciary duty and usurpation of corporate opportunity under state law. A preliminary estimate of damages attributable to this claim is in the range of $50,000 - $100,000. The Debtor conservatively estimates its potential recovery in such an action at $50,000.00 based on its course of dealing with the affected customers and vendors.

Because a portion of the Estate Litigation Claims are against insiders, the Debtor proposes that the Bankruptcy Court appoint the Chief Liquidation Officer as a neutral party to investigate and pursue such claims as described in § 7.2 of the Plan. The Chief Liquidation Officer would be appointed only if holders of Allowed General Unsecured Claims elect Distribution Option B pursuant to § 3.6.2 of the Plan, thereby foregoing immediate distribution of the Net Estate Cash in satisfaction of their Claims. The Debtor anticipates that the Chief Liquidation Officer would retain legal counsel on a contingency basis to pursue the Estate Litigation Claims, which would likely reduce the gross recoveries cited above by one-third, leaving approximately $126,000.00 available for distribution to the holders of Allowed General Unsecured Claims (assuming (i) that the Chief Liquidation Officer is fully successful in recovering the full value of the Estate Litigation Claims, (ii) that the defendants have assets with which to satisfy the successful verdicts).

The Debtor believes that the Chief Liquidation Officer would require 12 to 18 months in order to settle or litigate the Estate Litigation Claims to Final Orders, exclusive of any subsequent appeals.

## D.     DISTRIBUTIONS

All Distributions under the Plan will be made as outlined above and as set forth specifically in Articles 3 and 6 of the Plan.

E.        **OBJECTIONS TO CLAIMS**

Following the Effective Date, the Reorganized Debtor shall be authorized to object, or to succeed or otherwise join any objection filed by the Debtor prior to the Effective Date, to Claims so as to have the Bankruptcy Court determine the amounts to be allowed, if any, of such Claims and thus paid pursuant to the Plan (excluding Claims previously allowed by Final Order of the Bankruptcy Court).  Objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of such Claims no later than one hundred and twenty (120) days after the Effective Date; provided, however, that this deadline may be extended by the Bankruptcy Court upon the entry of an order by the Bankruptcy Court extending such deadline.  An objection to the allowance of a Claim by the Reorganized Debtor must be filed with the Bankruptcy Court and served upon the holder of the Claim and all parties who have requested notice.

Notwithstanding the foregoing, unless an order of the Bankruptcy Court specifically provides for a later date, any proof of claim for pre-petition debts of the Debtor filed after the Confirmation Date shall be automatically disallowed as a late-filed claim, without any action by the Reorganized Debtor, unless and until the party filing such Claim obtains (i) the written consent of the Reorganized Debtor to file such Claim late, or (ii) approval from the Bankruptcy Court upon notice to the Reorganized Debtor that permits the late filing of the Claim, in which event, the Reorganized Debtor shall have 120 days from the date of such written consent or order to object to such Claim, which deadline may be extended by the Bankruptcy Court upon motion of the Reorganized Debtor.

Prior to the Effective Date, the Debtor shall litigate to judgment, propose settlements of, or withdraw objections to such Disputed Claims asserted against it as the Debtor may choose.  From and after the Effective Date, the Reorganized Debtor shall litigate to judgment, propose settlements of, or withdraw objections to all Disputed Claims.  Prior to the expiration of thirty (30) days from the date of service of the objection, the Claimant whose Claim was the subject of the objection must file a response to the objection with the Bankruptcy Court and serve the response upon the objecting party and the Reorganized Debtor.  If the Claimant whose Claim was the subject of the objection fails to file and serve its response to the objection within the 30-day response deadline, the Bankruptcy Court may grant the relief requested in the objection against the non-responding Claimant without further notice or hearing.  All proposed settlements of Disputed Claims shall be subject to the approval of the Bankruptcy Court after notice and opportunity for a hearing (as that term is used in § 102(1) of the Bankruptcy Code).

F.        **MISCELLANEOUS**

1.        *Retention of Jurisdiction*

The Bankruptcy Court will retain jurisdiction after entry of the Confirmation Order to resolve all outstanding matters in the Chapter 11 Case.

2.        *Discharge*

The consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, discharge, release, and termination of all Claims of any kind against the Estate or the Debtor.  The Confirmation Order shall be a judicial determination of discharge and termination of all liabilities of and all Claims against the Estate and Debtor, except as otherwise specifically provided in the Plan.  On the Confirmation Date, as to every discharged Claim and other debt of the Debtor, the  holder of such Claim or other debt of the Debtor shall be permanently enjoined from asserting against the Reorganized Debtor, or against its assets or properties or any transferee thereof, any other or further Claim or other debt of the Debtor based upon any document, instrument, or act, omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date except as expressly set forth in the Plan.

### 3.    *Release of Certain Claims and Actions*

As of and on the Effective Date, all Persons or Entities who have held, hold, or may hold Claims against the Estate and/or the Debtor shall be deemed to have waived, released, and discharged all rights or claims, whether based upon tort, contract or otherwise, which they possessed or may possess prior to the Effective Date against the Estate and/or the Debtor, except as otherwise provided for in the Plan (including the documents filed as Schedules or Exhibits to the Plan) or the Confirmation Order; provided, however, that the foregoing release shall not apply to performance or nonperformance under the Plan or related instruments, securities, agreements or documents, or to any action or omission that constitutes actual fraud or criminal behavior.

### 4.    *Exculpation*

To the fullest extent permitted by § 1125(e) of the Bankruptcy Code, the Debtor, the Reorganized Debtor, and its respective members, officers, directors, employees, representatives, counsel, or agents shall be deemed released by each of them against the other and by the holders of Claims of and from any and all claims, obligations, rights, causes of action, and liabilities for any act or omission in connection with, or arising out of, the Chapter 11 Case, including, without limiting the generality of the foregoing, the Disclosure Statement, the pursuit and approval of the Disclosure Statement, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for Avoidance Actions, willful misconduct or gross negligence, and all such persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan and under the Bankruptcy Code.

### 5.    *Conditions Precedent to Confirmation*

The Plan shall not be confirmed unless and until the Bankruptcy Court has entered the Confirmation Order.

### 6.    *Conditions Precedent to the Effective Date*

The Plan shall not become effective unless and until the Effective Date (as defined in the Plan) occurs.  The Effective Date shall occur upon the earlier of: (a) the Business Day that is 30 days from entry of the Confirmation Order; or (b) upon satisfaction of the conditions set forth in Article 10 of the Plan.

## ARTICLE V
## CONFIRMATION OF THE PLAN

## A.    FEASIBILITY

Section 1129(a) of the Bankruptcy Code requires a judicial determination that confirmation of the Plan will not likely be followed by liquidation or the need for further financial reorganization of the Debtor unless liquidation is contemplated under the Plan.  In connection therewith, the Debtor is confident that there will be sufficient funds on hand to satisfy the minimum distributions required under § 1129(a)(9) of the Bankruptcy Code and the obligations of the Reorganized Debtor under the Plan from the continued operation of the Reorganized Debtor.

## B.    ACCEPTANCE

As a condition to Confirmation, § 1129(a) of the Bankruptcy Code, with certain exceptions, requires that each impaired Class accept the Plan.  In general, a class is "impaired" if the legal, equitable,

or contractual rights attaching to the Claims of that class are modified, other than by curing defaults and reinstating maturities or by payment in full in cash. The Bankruptcy Code defines acceptance of a plan (a) by a class of creditors entitled to vote thereon as acceptance by holders of two-thirds in dollar amount and a majority in number of Allowed Claims in that class and (b) by a class of equity holders entitled to vote thereon by acceptance two-thirds in amount of such interests. Each calculation, however, includes only those holders of Allowed Claims who actually vote to accept or reject the Plan.

Under § 1126(f) of the Bankruptcy Code, classes of Allowed Claims that are not "impaired" are conclusively deemed to have accepted the Plan. Under § 1126(g) of the Bankruptcy Code, classes that receive no distributions under the Plan are conclusively deemed to have rejected the Plan. For these reasons, acceptances of the Plan are being solicited from all Classes impaired pursuant to the Plan, if any.

## C.     NON-ACCEPTANCE AND CRAM DOWN

If any Class of impaired Claims fails to accept the Plan, the Debtor will seek to effect a "cram down" on such dissenting Class and all Classes that are junior to such dissenting Class under § 1129(b) of the Bankruptcy Code. The Debtor also reserves the right to amend the Plan and request confirmation of the Plan as further amended. If an amendment to the Plan is material, the Debtor may have to re-solicit acceptances from any Class affected by the change(s), unless that Class can be deemed to have accepted or rejected the Plan. The Plan's treatment of Classes is consistent with the foregoing. Consequently, the Debtor believes that if any of the holders in Classes that are impaired reject the Plan, the Plan may be confirmed over such opposition. Pursuant to § 1129(b) of the Bankruptcy Code, the Debtor will seek Confirmation of the Plan notwithstanding the possible rejection of the Plan by holders of Claims in any class.

## D.     BEST INTERESTS TEST (LIQUIDATION ANALYSIS)

Notwithstanding acceptance of the Plan in accordance with § 1126 of the Bankruptcy Code, the Court must find that each member of an impaired Class of creditors, if any, has each accepted the Plan, or will receive or retain property of a value, as of the Effective Date of the Plan, that is not less than the amount such creditor or interest holder would receive or retain if the Estate was liquidated under Chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan complies with this "best interests" test.

A conversion of the Chapter 11 Case to a case administered under Chapter 7 of the Bankruptcy Code, followed by liquidation, would involve greater expense and risk than the reorganization contemplated by the Plan. A conversion of the Chapter 11 Case would require the appointment of a trustee to conduct the liquidation of the Estate. Such a trustee would likely have limited knowledge of the Chapter 11 Case or of the Debtor's records, assets, or business. The fees charged by a Chapter 7 trustee and any professionals he or she would hire (such as legal counsel, accountants, appraisers, brokers, and the like) could impose additional administrative costs on the Estate that will not be incurred under the Plan, and which would be paid ahead of other Allowed Claims. When coupled with the inevitable delay caused by the appointment of a Chapter 7 trustee and retention of the trustee's professionals, distributions to holders of Allowed Claims that would otherwise be made on or after the Effective Date of the Plan necessarily would be delayed for an indefinite period.

Many of the Debtor's assets are encumbered by liens totaling approximately $1,429,352.20. The holders of such secured claims against Estate assets are as follows: taxing authorities ($43,841.30); BB&T ($513,510.90); and Summit ($872,000.00). Such liens would first be satisfied from the proceeds of the collateral securing them. Thus, when analyzing the Debtor's proposed plan, creditors should consider the estimated amount of General Unsecured Claims as projected by the Debtor ($2,026,000.00), as well as the likely sale values of the Debtor's assets.

If this case were converted to a Chapter 7 proceeding, the Debtor anticipates that the trustee would be unable to recover the fair market value of its assets (given the distressed nature of a Chapter 7 liquidation).   Instead, the trustee would likely recover only the liquidation values of the assets.  Under that scenario, and taking into account the statutorily allowed trustee commissions and related sale expenses, the holders of Allowed Secured Claims would receive less than the full value of their respective collateral.   Additionally, administrative fees of the Chapter 7 case (including Professional fees, sales commissions, and statutorily required commissions payable to the trustee), as well as administrative expenses of the prior Chapter 11 case, would be paid ahead of other creditors.

Assuming the assets of the Estate were sold at their liquidation values, the anticipated result of such a liquidation is summarized in the following table:

### Hypothetical Liquidation Summary

**Assets[1]**

| | |
|---|---|
| Cash | $170,000.00 |
| Furnishings | $1,800.00 |
| Computers | $6,400.00 |
| 2001 Dodge Truck | $1,160.00 |
| Pre-Filing A/R | $300,000.00 |
| Equipment | $474,000.00 |
| Inventory | $355,000.00 |
| Estate Litigation Claims | $126,000.00 |
| Total Assets | $1,434,360.00 |

**Liquidation Expenses**

| | |
|---|---|
| Sales Commissions | $83,836.00 |
| Secured Claims | $1,429,352.20 |
| Statutory Trustee's Commission | $69,280.80 |
| Chapter 7 Prof. Fees/Expenses | $50,000.00 |
| Chapter 11 Administrative Claims | $46,825.00 |
| Priority Unsecured Claims | $20,382.65 |
| Total Expenses | $1,699,676.65 |

**Net Proceeds for Unsecured Distributions:     ($265,316.65)**

---

[1] Furnishings, computers, and vehicles are listed at 80% of their scheduled values.  Equipment is valued based on the guaranteed auction offer received by the Debtor.  The liquidation value of the Debtor's inventory was determined in consultation with a professional auctioneer familiar with such assets.

In contrast, under the proposed Plan all allowed administrative expenses of the Debtor's Chapter 11 Case, all Allowed Secured Claims, and all Allowed Priority Claims will be paid in full on or before the occurrence of the Effective Date.  Moreover, unsecured creditors can expect to receive an estimated 4% distribution on their Allowed General Unsecured Claims under Distribution Option A, and perhaps as much as 6% under Distribution Option B.  These distributions may be higher if the Reorganized Debtor's recovers Net Sale Proceeds or Net Litigation Proceeds greater than those projected herein.  Conversely, the estimated distributions may be lower if the total amount of Allowed General Unsecured Claims is greater than that estimated by the Debtor.

The following calculation demonstrates the minimum distribution to unsecured creditors that the Debtor anticipates will be made under the Plan under both distribution options:

<table>
<tr><td>Option A – Immediate Distribution</td><td>Option B – Delayed Distribution</td></tr>
<tr><td>($75,000 x 100)  =  4%</td><td>($126,000 x 100)  =  6%</td></tr>
<tr><td>$2,026,000</td><td>$2,026,000</td></tr>
</table>

Confirmation of the Plan is therefore preferable to liquidating the case under Chapter 7 of the Bankruptcy Code.  Accordingly, the Debtor believes that confirmation of the Plan is in the best interests of Creditors and fully complies with the statutory requirements of the Bankruptcy Code.

## ARTICLE VI
## MATERIAL UNCERTAINTIES AND RISK FACTORS

Holders of claims against the Debtor and the Estate should read and carefully consider the risk factors set forth below, as well as other information set forth in the Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference herein).  These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and implementation thereof.

## A.    CERTAIN DISPUTED CLAIMS

The feasibility of the Plan is predicated upon the levels of the Claims not being materially in excess of the amounts estimated herein and in the Plan.  If such claims are substantially in excess of the estimated amounts, the Debtor's ability to satisfy its payment obligations under the Plan could be impacted.  Moreover, the stated amounts of claims in each Class listed above are merely estimates based on the amounts listed on the Debtor's Schedules, the current claims register published by the Clerk of the Bankruptcy Court, and the Debtor's projections regarding the amount of filed Claims that will be ultimately disallowed.  All amounts are subject to change upon the completion of the claims review and objection process by the Reorganized Debtor.

## B.    CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

If any conditions precedent to Confirmation and the Effective Date are not satisfied, the Plan may be withdrawn and the Confirmation Order vacated.

**C.        CERTAIN TAX MATTERS**

Implementation of the Plan may have material federal income tax consequences to the Debtor and to the holders of Claims.   Nothing in the Plan or Disclosure Statement should be considered a representation or advice concerning such tax consequences.

**ARTICLE VII**
**CONCLUSION**

For the reasons set forth in this Disclosure Statement, the Debtor believes that confirmation and consummation of the Plan is preferable to all other alternatives.   The Debtor thus urges all Creditors entitled to vote to accept the plan and to evidence such acceptance by returning their ballots so that they will be received by _____, 2013.


Dated:  Charlotte, North Carolina
          October 15, 2013

                              Respectfully submitted,

                              Metrolina Steel, Inc.


                    By:     _____*/s/ John T. Hurt*_____
                              John T. Hurt, Treasurer